IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> HOMELAND INSURANCE COMPANY OF NEW YORK, <br><br> Defendant. | Civil Action No.: <br><br><br> **COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

Plaintiff Blue Cross and Blue Shield of Florida, by its counsel, asserts the following claims against defendant Homeland Insurance Company of New York ("Homeland") and alleges:

### NATURE OF ACTION

1.     Plaintiff brings this coverage action against the defendant insurance company for a declaratory judgment, pursuant to 28 *U.S.C.* § 2201, that Homeland must provide coverage for defense and indemnity costs arising from a multidistrict litigation filed against plaintiff in the Northern District of Alabama.

### PARTIES

2.     Plaintiff is incorporated under the laws of the State of Florida and maintains its principal place of business at 4800 Deerwood Campus Parkway, Jacksonville, Florida 32246.

3.     Homeland, upon information and belief, is incorporated under the laws of the State of New York and maintains its principal place of business at 605 Highway 169 North, Suite 800, Plymouth, Minnesota 55441.

ME1 31918931v.6

- 2 -

**JURISDICTION AND VENUE**

4.      This Court possesses subject matter jurisdiction over this action pursuant to 28 *U.S.C.* §1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this action involves a dispute between citizens of different states.

5.      Venue properly rests in this Court pursuant to 28 *U.S.C.* §1391.

6.      This action is commenced pursuant to the Declaratory Judgment Act, 28 *U.S.C.* § 2201, *et seq.*

**FACTUAL ALLEGATIONS**

**I.      The Blue Cross Blue Shield Plans**

7.      More than 80 years ago, the first Blue Cross Plans began with local hospitals, while Blue Shield Plans were developed in conjunction with medical societies (together, "Blue Plans").

8.      Blue Plans provided subscribers with indemnity coverage for healthcare services, alleviating economic fears about medical events, and gave hospitals and doctors assurances that they would be paid.

9.      The Blue Cross and Blue Shield organizations formed the Blue Cross and Blue Shield Association ("BCBSA") in 1982.

10.     The Blue System now consists of the BCBSA and several independent licensees that operate under the familiar Blue Cross and Blue Shield trademarks.

11.     Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"), an independent licensee of the BCBSA, has been providing insurance to residents of Florida for over 75 years. Driven by its mission of helping people and communities achieve better health, Florida Blue serves more than five million health care members across the state.

ME1 31918931v.6

## II.      Nature of the Underlying Action

12.      In 2012, numerous class actions were filed against various Blue Cross Blue Shield entities or member plans (the "Blue Plans") and the BCBSA alleging violations of antitrust laws.

13.      Florida Blue was a defendant in certain of these class actions and reported the claims to Homeland during the Policy Period set forth in the insurance policy Homeland sold to Florida Blue.

14.      In December 2012, the Judicial Panel on Multidistrict Litigation consolidated and transferred several of these actions to the United States District Court for the Northern District of Alabama, creating the MDL litigation styled *In Re: Blue Cross Blue Shield Antitrust Litigation*, Master File No. 2:13-cv-20000-RDP (the "Antitrust Litigation").

15.      The Antitrust Litigation is separated into two tracks:  (1) the "Subscriber" track, and (2) the "Provider" track.

16.      The term "Subscriber" refers to an individual who is covered under a health insurance plan issued by a Blue Cross Blue Shield Company.

17.      The term "Provider" refers to any provider of medical services, including medical doctors, osteopaths, chiropractors, hospitals, ambulatory surgical centers, urgent care centers, etc.  Providers, in essence, can include any individuals or organizations that provide health care services.

18.      In April 2017, the Subscribers filed a Third Amended Consolidated Class Action Complaint (the "Subscriber Consolidated Third Amended Complaint") against the Blue Plans, including Florida Blue, and the BCBSA.  A copy of the Subscriber Consolidated Third Amended Complaint is attached hereto as Exhibit A.

ME1 31918931v.6

19.     Also in April 2017, the Providers filed a Consolidated Fourth Amended Complaint (the "Provider Consolidated Fourth Amended Complaint") against the Blue Plans, including Florida Blue, and the BCBSA.  A copy of the Provider Consolidated Fourth Amended Complaint is attached hereto as Exhibit B.[1]

20.     The Subscribers and Providers allege, among other things, that the Blue Plans, including Florida Blue, violated federal antitrust laws and engaged in price fixing and/or anticompetitive activities.

## III.     The Insurance Policy

21.     Homeland sold to Florida Blue a Managed Care Errors and Omissions Excess Indemnity Policy number MCX-1759-12, effective February 1, 2012 through February 1, 2013 ("Policy").  A copy of the Policy is attached hereto as Exhibit C.

22.     The limit of liability of the Policy is $10,000,000 per claim and in the aggregate.

23.     The Policy provides follow-form errors and omissions liability coverage to Florida Blue, meaning it provides coverage to Florida Blue if the applicable underlying primary policy provides coverage to Florida Blue.  A copy of the primary E&O policy is attached hereto as Exhibit D (the "Primary Policy").

24.     The Policy follows form to a primary policy that requires the insurer to pay "Loss which the Insured is legally obligated to pay as a result of a Claim that is first made against the Insured during the Policy Period."  Primary Policy, § I (Ex. D).

25.     "Loss" is defined to include "Defense Expenses and any monetary amount which an Insured is legally obligated to pay as a result of a Claim."  Primary Policy, § IV.J, as amended by Endorsements 3, 9 and 10 (Ex. D).

---

[1] The caption page of Exhibit B states that it was "filed under seal," but this complaint is now publicly available on the Court's CM/ECF system.

ME1 31918931v.6

26.     "Claim" means "any written notice received by any Insured, which is brought to the attention of the Risk Management or Corporate Legal Departments of the Insured Entity, that a person or entity intends to hold an Insured responsible for a Wrongful Act which took place on or after the retroactive date listen in ITEM 7 of the Declarations.  In clarification and not in limitation of the foregoing, such notice may be in the form of an arbitration, mediation, judicial, declaratory or injunctive proceeding, or a formal administrative or regulatory proceeding.  A Claim will be deemed to be made when such written notice is first received by a member of the Risk Management or Corporate Legal Departments of an Insured Entity."  Primary Policy, § IV.C, as amended by Endorsement 12 (Ex. D).

27.     "Wrongful Act" is defined to mean, among other things, "any actual or alleged act, error or omission in the performance of, or any failure to perform, a Managed Care Activity by any Insured Entity or by any Insured Person acting with[in] the scope of his or her duties or capacity as such." Primary Policy, § IV.W (Ex. D).

28.     "Managed Care Activity" is defined to include a number of services or activities performed by or on behalf of the Insured, including, but not limited to: Provider Selection; Utilization Review; advertising, marketing, selling or enrollment for healthcare plans; Claims Services; and/or establishing health care provider networks.  Primary Policy, § IV.K, as amended by Endorsements 16 and 32 (Ex. D).

29.     "Defense Expenses means reasonable legal fees and expenses incurred in the investigation, adjustment, defense or appeal of a Claim; provided that Defense Expenses shall not include remuneration, salaries, overhead, fees or benefit expenses of any Insured."  Primary Policy, § IV.E (Ex. D).

30.     The Primary Policy also expressly provides coverage for "Antitrust Activity." Primary Policy, Declarations at Item 3(b) (Ex. D).

31.     "Antitrust Activity" is defined to include "any actual or alleged: price fixing; restraint of trade; monopolization; unfair trade practices; or violation of the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any other federal statute involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, or of any rules or regulations promulgated under or in connection with any of the foregoing statutes, or of any similar provision of any federal, state or local statute, rule or regulation or common law."  Primary Policy, § IV.A (Ex. D).

32.     The Policy is triggered when the limit of underlying coverage has been exhausted. Policy, § I.A (Ex. C).

33.     The Policy provides that the full amount of the applicable underlying limit of liability can be satisfied by payments made "by the issuer(s) of the Underlying Insurance, the Insured [Florida Blue] or by another party on behalf, or for the benefit, of the Insured or the issuer(s) of the Underlying Insurance."  Policy § I(E) (Ex. C).

34.     Florida Blue paid substantial premiums to purchase the Policy, and Florida Blue has complied with all applicable terms and conditions of the Policy.

**IV.     Florida Blue's Effort to Obtain Insurance Coverage from Homeland**

35.     The allegations of the Subscribers and Providers in the Antitrust Litigation fall squarely within the coverage afforded by the Policy.

36.     Florida Blue provided timely notice of the Antitrust Litigation to all of its insurers, including Homeland, and demanded Homeland provide coverage for the Antitrust Litigation.

ME1 31918931v.6

- 7 -

37.     Homeland did not issue a coverage position in response to Florida Blue's notice of the Antitrust Litigation.

38.     On October 23, 2018, Florida Blue and all of its insurers in this policy period participated in a mediation session in an attempt to resolve the insurance coverage issues arising from the Antitrust Litigation.

39.     Florida Blue was informed that Homeland was not willing to participate in a settlement with Florida Blue's other insurers.

40.     The parties did not reach a settlement on the first day of mediation.

41.     On April 30, 2019, Florida Blue and its insurers participated in a second mediation session.

42.     Homeland participated in the second mediation session but once again was not willing to participate in a global settlement with Florida Blue's other insurers.

43.     Through significant effort during both mediation sessions and discussions following those sessions, Florida Blue and its other insurers, except Homeland, entered into a confidential settlement regarding the other insurers' obligations with respect to the Antitrust Litigation.

44.     On November 20, 2019, Florida Blue asked Homeland to provide a written coverage position in response to Florida Blue's request for insurance coverage for its costs arising out of the Antitrust Litigation.

45.     To date, Homeland has not provided a written coverage position in response to Florida Blue's request.

ME1 31918931v.6

46.     While Florida Blue's other insurers have reached a confidential settlement with Florida Blue, Homeland has failed to provide its coverage position or commit to providing coverage for any settlement of the Antitrust Litigation.

## COUNT I
## DECLARATORY JUDGMENT

47.     Florida Blue incorporates by reference the allegations of Paragraphs 1 through 46 of this Complaint and makes them a part hereof as if fully set forth at length herein.

48.     Florida Blue paid substantial premiums to Homeland for coverage under the Policy, and Florida Blue has at all times complied with all relevant provisions of the Policy.

49.     Homeland contracted to pay Loss, including Defense Expenses, incurred as a result of a Claim.

50.     Homeland fails to acknowledge its obligations to: (a) fund Florida Blue's defense of the Antitrust Litigation; and (b) pay any judgment or settlement arising from the Antitrust Litigation.

51.     By reason of the foregoing, an actual and justiciable controversy exists between Florida Blue and Homeland regarding their rights and obligations under the Policy.

52.     The rights, status and other legal obligations of Florida Blue and Homeland remain uncertain and insecure, and this Court's entry of declaratory judgment will terminate the uncertainty and controversy giving rise to this proceeding.

**WHEREFORE**, Florida Blue respectfully requests that this Court issue a declaration that:

(a)     under the terms of the Policy, Homeland has a duty to pay on behalf of Florida Blue defense and indemnity arising from the Antitrust Litigation within the limits of the Policy and in excess of underlying limits;

ME1 31918931v.6

(b)     that the underlying limits may be satisfied by payments by the issuers of the underlying policies, Florida Blue, or a combination thereof;

(c)     under the terms of the Policy, Homeland has a duty to indemnify and reimburse Florida Blue for the fees, expenses, and costs Florida Blue will incur in defense of the Antitrust Litigation;

(d)     Homeland must reimburse Florida Blue for fees, expenses and costs that it has incurred and will incur in bringing this insurance coverage action; and

(e)     such other relief as the Court deems appropriate.


DATED: February 26, 2020

Joann M. Lytle, Esq.[2]
Ashley L. Turner, Esq.
MCCARTER & ENGLISH, LLP
1600 Market Street
Suite 3900
Philadelphia, PA 19103
Telephone: (215) 979-3879
*jlytle@mccarter.com*
*aturner@mccarter.com*

 s/ Michael A. Abel
Michael A. Abel, Esq.
Florida Bar No. 0075078
ABEL BEAN LAW P.A.
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 516-5486
*mabel@abelbeanlaw.com*

*Attorneys for Plaintiff Blue Cross and Blue Shield of Florida, Inc.*

---

[2] In accordance with Local Rule 2.02, Joann M. Lytle and Ashley L. Turner will be filing a written motion, as well as a designation and consent to act, within fourteen (14) days.

ME1 31918931v.6